## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert Ward, *on his own behalf and on behalf of all others similarly situated,* | : |
| | : |
| | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 2:17-cv-02069-MMB |
| | : |
| Flagship Credit Acceptance LLC, | : |
| | : |
| Defendant | : |
| | : |
| | : |
| | : |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

TERMS OF THE SETTLEMENT.........................................................................3

POINT I THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................8

    A.  Fed. R. Civ. P 23(a) Requirements...........................................................9

        i.    Numerosity is Satisfied ...............................................................9

        ii.   Commonality is Satisfied ...........................................................10

        iii.  Typicality is Satisfied................................................................10

        iv.  Adequacy of Representation is Satisfied......................................11

    B.  Fed. R. Civ. P. 23(b)(3) Requirements...................................................12

POINT II THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY
        APPROVED.........................................................................................13

    A.  The Settlement Agreement Is the Result of Engaged, Arm's-Length
        Negotiations Overseen By An Experienced, Neutral Mediator. ................14

    B.  The Settlement Agreement Is a Preferable Alternative to the Risks
        Through Continued Litigation...................................................................16

        i.    The Settlement Agreement Does Not Provide Unwarranted
            Preferential Treatment to Any Segment of the Class. ....................16

        ii.   The Settlement Agreement Provides a Substantial Benefit to
            Settlement Class Members and Falls Within a Range of Possible
            Approval.................................................................................17

POINT III THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE...............21

CONCLUSION....................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................... 8, 12, 13

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994)................................................ 9, 10

*Barabin v. Aramark Corp.*, 210 F.R.D. 152 (E.D. Pa. 2002) ............................................................ 10

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)...................................... 16

*CE Design Ltd.v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009)........................ 12

*CE Design v. Beaty Const., Inc.*, 2009 WL 192481 (N.D. Ill., Jan. 26, 2009) .............................. 9

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299 (D.N.J. 2013) .......... 9

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ................................................. 17

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ............................................................. 13

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ...................................... 11

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ......................................................... 13

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ................................... 18

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014).................................... 18

*Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014)........... 21

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364 (1982)....................................... 10, 12

*Hanlon v. Palace Entm't Holdings, LLC*, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) .................. 14

*Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014)....................................................... 9

*In re AMF Bowling*, 334 F. Supp. 2d 462 (S.D.N.Y. 2004) ......................................................... 15

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336 (E.D. Pa. 2007) .................. 15

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) .............. 20

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)............................................................... 14

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005)......................................................... 8, 12

*In re Flonase Antitrust Litig.*, 291 F.R.D. 93 (E.D. Pa. 2013)....................................................22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)..........................................................13

*In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013).............................................22

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)................................14, 17

*In re Mut. Funds Inv. Litig.*, 2011 WL 1102999 (D. Md. Mar. 23, 2011)....................................22

*In re Residential Doors Antitrust Litig.*, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998)...................17

*In re So. Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ...................................................17

*In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) .........20

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)......................................11, 14

*In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ....................15

*Klingensmith v. BP Products N. Am., Inc.*, 2008 WL 4360965 (W.D. Pa. Sept. 28, 2008) .....8, 14

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) .................................12

*Lees v. Anthem Ins. Cos. Inc.*, 2015 WL 3645208 (E.D. Mo. June 10, 2015)..............................17

*Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)...........................22

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012) ..............................................9

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015)...........................................20

*Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007)...............................................14, 15

*Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131 (3d Cir. 2011).................................................22

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678 (D. Or. Jan. 5, 2016)....................18

*Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...................................................22

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965 (1985) ......................................21

*Rivera v. Lebanon Sch. Dist.*, 2013 WL 877161 (M.D. Pa. Mar. 8, 2013)....................................13

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)..................................20

*Smith v. Dominion Bridge Corp.*, 2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) .......................... 20

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)............................................................... 9

*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386 (E.D. Pa. 2001) ........................... 10

W. Va. v. Chas. Pfizer & Co., 314 F. Supp. 710 (S.D.N.Y. 1970).................................. 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011)............................ 10

*West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971) ............................. 16

**Statutes**

47 U.S.C. § 227 ........................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 2

Fed. R. Civ. P. 23(a)(4)......................................................................................... 11

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 9

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 10

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................... 21

**Treatises**

*Manual for Complex Litig.* (2d. ed. 1985) ................................................................. 14

*Manual for Complex Litig.* (3d ed. 1995) ................................................................. 15

*Manual for Complex Litig.* (4d. ed. 2004) .................................................................. 8

Plaintiff Robert Ward ("Plaintiff"), having reached a class action settlement agreement with Defendant Flagship Credit Acceptance LLC ("Flagship" or "Defendant") (collectively, the "Parties"), respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 23, for an order: (1) granting preliminary approval of the Class Action Settlement (the "Settlement") in this matter, (2) certifying the proposed Settlement Class for settlement purposes, (3) approving the form and content of the Notice to be sent to the members of the Settlement Class pursuant to the plan detailed in the Settlement Agreement, (4) appointing proposed Class Counsel and the Class Representative to represent the Settlement Class, and (5) scheduling a final fairness hearing.[1] Flagship concurs in this motion.

## **INTRODUCTION**

Plaintiff initiated this action on May 5, 2017, alleging for himself and all others similarly situated that Flagship violated the Telephone Consumer Protection Act ("TCPA") by placing calls to putative class members' cellular telephones with an automatic telephone dialing system or with the use of artificial or prerecorded voices without prior express consent. (Doc. No. 1). Plaintiff claims those calls violated 47 U.S.C. § 227(b)(1)(A)(3) and that Flagship is liable to him and the class for allegedly unlawful calls.

Soon after filing, counsel for the Parties began their discussions on the merits of Plaintiff's claims, both individually and on a class basis. The Parties engaged the services of the Honorable Joel Rosen, an experienced mediator and retired United States Magistrate Judge in the District of New Jersey. The Parties provided Judge Rosen with detailed mediation briefs and conducted a full day of negotiations on November 16, 2017. The Parties did not reach an agreement during that session. However, the Parties continued settlement discussions through

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meaning as those in the Settlement Agreement.

Judge Rosen and conducted a second mediation session on February 13, 2018.  The discussions culminated in an agreement in principle to settle the claims asserted against Flagship in this case. Subsequent arm's-length negotiations and confirmatory formal discovery have produced an agreement on the specific terms set forth in the Settlement Agreement.[2]

The Parties now present those terms for the Court's preliminary approval.  The Parties ask that the Court lift the stay currently in place and enter the Preliminary Approval Order attached as Exhibit 4 to the Settlement Agreement to (i) conditionally certify the Settlement Class for purposes of settlement; (ii) appoint Plaintiff as the Settlement Class Representative; (iii) appoint Sergei Lemberg and Stephen F. Taylor of Lemberg Law, LLC, as Class Counsel; (iv) preliminarily approve the terms of the Settlement Agreement; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)); and (vi) schedule a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement.

The Settlement Agreement was arrived through arm's-length negotiations by experienced counsel, aided by an experienced, neutral mediator, and after sufficient discovery to weigh the merits of settlement.  The Settlement Agreement does not provide preferential treatment to any subset of the Settlement Class.  The Settlement Class exceeds the certification requirements of Fed. R. Civ. P. 23(a) and (b)(3) and the Settlement Class is more than adequately represented by

---

[2]  The executed Settlement Agreement is attached hereto as Exhibit A.  Appended to the Settlement Agreement and incorporated therein are the following exhibits:

      Exhibit 1 – the "Claim Form"
      Exhibit 2 – the "Final Approval Order and Judgment"
      Exhibit 3 – the "Post Card Notice"
      Exhibit 4 – the "Long-Form Notice"
      Exhibit 5 – the "Preliminary Approval Order"
      Exhibit 6 – the "Final Judgment"

Class Counsel.  Moreover, the Settlement Agreement provides for fair and reasonable relief for the Settlement Class for their disputed claims under the TCPA and warrants preliminary approval and notice to the Settlement Class Members.

## TERMS OF THE SETTLEMENT

1. Class Definition

The Settlement Class is defined as:

All persons whom Flagship called on their cellular telephone through the use of any version of a TCN, LiveVox or Aspect dialing system and/or with an artificial or prerecorded voice at any time from May 5, 2013 to the date of preliminary approval.

*Settlement Agreement,* Art. II, ¶ 30.  From the call records produced, the Parties estimate that there are approximately 178,944 members of the Settlement Class as of May 31, 2018. (Taylor Decl. ¶¶ 15-18).  This figure is derived from the dial histories of the three systems referenced in the Settlement Class definition which contain 178,944 unique cellular numbers called during the class period: Aspect (11,276 unique numbers); TCN (33,855 unique numbers); and LiveVox (133,813 unique numbers).  *Id*. ¶ 16. The complete dial histories (cell and non-cell alike) of all three dialers were queried against Lexis-Nexis databases and Flagship's own internal records to identify the cellular numbers.  *Id*. ¶ 17. Because the class period will run through the date of preliminary approval, the total number of class members is expected to increase.  Following preliminary approval, updated data for the post-May 31, 2018 period will be provided by Flagship.[3] *Id*. ¶ 18.

2. Settlement Benefits to Settlement Class Members

Under the terms of the Settlement Agreement, each Class Member can claim a share of a $4 million, non-reversionary, Settlement Fund. *See Settlement Agreement*, Art. III, ¶ 1.

---

[3] This will be data from the Aspect system alone as the TCN and LiveVox systems are no longer in use by Flagship.

Settlement Class Members who timely submit a claim form will receive a pro-rata distribution of the Settlement Fund, after the Attorney's Fees and Costs, any Incentive Award to Named Plaintiff, and Settlement Administration Costs are deducted from the Settlement Fund and the Settlement Administrator reviews all Claim Forms to determine a final number of claimants. *Id.* at ¶ 1(c).  If money remains in the Settlement Fund after all Valid Claim Forms are paid, from unclaimed funds or un-cashed checks, the Settlement Administrator shall distribute *cy pres* the remaining value from the Settlement Fund to a recipient mutually agreed upon by the Parties and approved by the Court. *Id.* at ¶ 1(d).  The Parties nominate and will request that the Court approve the JumpStart Coalition for Personal Financial Literacy as the *Cy Pres* Recipient. *Id.* In no event will unclaimed or un-cashed checks revert back to Flagship. *Id.*

   3.  <u>Claim Form</u>

     To receive any settlement benefits, Settlement Class Members will be required to submit a short Claim Form. *Settlement Agreement*, Art. III, ¶ 1(b) (*Settlement Agreement* <u>Exhibit 1</u> (including a hard copy version and website version of the claim form)).  A Claim Form will be included with the Notice or can be found and filed online at a dedicated website. *Settlement Agreement*, Art. IV, ¶ 3(f)-(h). Claim Forms will be considered timely if they are submitted electronically or postmarked no later than thirty (30) days before the date set by this Court for the Final Approval Hearing. *Id.* at Art. IV, ¶ 3(h).

   4.  <u>Payment of Claims</u>

     After the Effective Date of Final Approval and within sixty (60) days of resolution of all disputed claims, the Settlement Administrator shall mail or otherwise provide a Benefit Check to each Settlement Class Member who has returned or submitted a Valid Claim Form. *See Settlement Agreement*, Art. III, ¶ 3(a).

Benefit Checks for the Claimant Payments shall be valid for ninety (90) days after issuance. *See Settlement Agreement*, Art. III, ¶ 3(c). All Benefit Checks that are not negotiated within ninety (90) calendar days of their date of issue will become void. *Id*. Any funds associated with Benefit Checks not cashed by Class Members within that time, and all other unclaimed funds, will be paid to the *Cy Pres* Recipient approved by the Court within one hundred twenty (120) days after the mailing of all Benefit Checks. *See Settlement Agreement*, Art. III, ¶ 3(d).

5. <u>Settlement Class Representative and Class Counsel; Attorney's Fees and Incentive Award</u>

The Settlement Agreement provides that, for purposes of settlement, named Plaintiff Robert Ward will be appointed as Settlement Class Representative and that Lemberg Law, LLC will be appointed as Settlement Class Counsel. *Settlement Agreement*, Art. IV, ¶ 1. Flagship will not oppose an application submitted by Plaintiff or Settlement Class Counsel for attorney's fees and costs up to one-third of the Settlement Fund ($1,333,333.33) and for an individual incentive award for Mr. Ward of up to ten thousand dollars ($10,000.00), both subject to court approval. *Settlement Agreement*, Art. VI, ¶¶ 1 & 2. Any award of Attorney's Fees and Costs or an Incentive Award shall be paid from the Settlement Fund prior to the *pro rata* distribution of benefits to the Settlement Class. *Settlement Agreement*, Art. III, ¶ 1(c).

6. <u>Releases</u>

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice as to himself and all Settlement Class Members. *Settlement Agreement*, Art. V. Plaintiff and all members of the Settlement Class who do not timely opt out will release Flagship from all claims that were or could have been asserted which "arise out of the use by Flagship" of any automated dialing technology or prerecorded voices to make calls. *Id*. at ¶¶ 1(b), (c) & (e).

7. <u>Notice</u>

Within sixty (60) days of the entry of the Preliminary Approval Order, Flagship will provide the Settlement Administrator with a list of the unique cellular telephone numbers associated with Class Members along with names and addresses where available, as they exist in Flagship's records. *Settlement Agreement*, Art. IV, ¶ 3(c).

The Settlement Administrator will identify the mailing address of each Settlement Class Member by performing a reverse lookup of each cellular number to identify the address of Settlement Class Member. (Verkhovskaya Decl. ¶¶ 17-20).  Within seventy-five (75) days of the entry of the Preliminary Approval Order, the Settlement Administrator will send written notice to the class. *Settlement Agreement*, Art. IV, ¶ 3(d).

The mailed notice will consist of the short-form notice substantially in the form of <u>Exhibit 3</u> to the Settlement Agreement.  In addition, before the notice is mailed, a dedicated settlement website will be created where case-specific documents may be accessed, claims may be filed and where the long-form notice (<u>Exhibit 4</u> to the Settlement Agreement) will be posted. *Settlement Agreement*, Art. IV, ¶¶ 3(g) & (h).  Both the short-form mailed notice and the long-form notice will advise Settlement Class Members of the material terms of the settlement, their rights to claim, opt out and/or object to the Settlement Agreement.  *Settlement Agreement* <u>Exhibits 3 & 4</u>.  The short-form notice will also direct Settlement Class Members to the settlement website where they can access additional information.

The Settlement Agreement also provides that Flagship shall, within 30 days of entry of the Preliminary Approval Order, pay to the Settlement Administrator the sum of fifty thousand dollars ($50,000.00) as an advance against the Settlement Fund to be used for preliminary Settlement Administration Costs. *Settlement Agreement*, Art. IV, ¶ 3(a).

Total Settlement Administration Costs in this matter are estimated at $167,927.00. (Taylor Decl. ¶ 23).

8. <u>Opt-Out and Objection Rights</u>

Members of the Settlement Class can opt out of the class by sending a written request for exclusion to the Settlement Administrator. *Settlement Agreement*, Art. IV, ¶ 4.  Any individual opt-out notices must be postmarked no later than thirty (30) days before the date set by this Court for the Final Approval Hearing.  Also by that time, any Class Member who wishes to object to the Settlement Agreement must file with the Court and serve upon the Parties a written notice of the objections, along with supporting papers setting forth the objector's grounds for objection. *Settlement Agreement*, Art. IV, ¶ 6.

9. <u>Proposed Deadlines</u>

| **EVENT** | **SCHEDULED DATE** |
|---|---|
| Notice mailing deadline | 75 days after entry of Preliminary Approval Order |
| Last day for Class Members to opt-out of Settlement | 30 days prior the Final Approval Hearing |
| Last day for objections to the Settlement to be filed with the Court | 30 days prior the Final Approval Hearing |
| Last day to submit a Valid Claim Form | 30 days prior the Final Approval Hearing |
| Briefs in support of Final Approval due by | 14 days prior to the Final Approval Hearing |
| Attorney's Fees and Costs application due by | 14 days prior to the Final Approval Hearing |
| Incentive Award application due by | 14 days prior to the deadline to opt-out or object |
| CAFA compliance certification due by | 14 days prior to the Final Approval Hearing |
| Parties file responses to objections, if any | 7 days prior to the Final Approval Hearing |
| Final Approval Hearing | No earlier than 75 days after the Notice mailing deadline (150 days from preliminary approval) |

## POINT I
## THE SETTLEMENT CLASS SHOULD BE CERTIFIED

To approve a class action settlement, the Court must find that the Settlement Class is appropriately certified pursuant to Fed. R. Civ. P. 23. *See Manual for Complex Litigation (Fourth)* § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). In the context of a settlement class, certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *see also Klingensmith v. BP Products N. Am., Inc.*, 2008 WL 4360965, at *2 (W.D. Pa. Sept. 28, 2008). The Third Circuit has held that "regardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).

For settlement purposes only, the Parties respectfully request that the Court provisionally certify the Settlement Class defined as:

> All persons whom Flagship called on their cellular telephone through the use of any version of a TCN, LiveVox or Aspect dialing system and/or with an artificial or prerecorded voice at any time from May 5, 2013 to the date of preliminary approval.

*Settlement Agreement,* Art. II, ¶ 30. As detailed below, the Settlement Class satisfies the Fed. R. Civ. P. 23 requirements.

### A. **Fed. R. Civ. P 23(a) Requirements**

#### i.   Numerosity is Satisfied

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied where joinder of absent class members is impracticable. *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). Where "the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Rule 23 does not require direct evidence of the exact number and identities of the class members and a plaintiff may show sufficient circumstantial evidence specific to the problems, parties, and geographic areas actually covered by a class definition to allow the court to make factual findings respecting numerosity. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012); *see also CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *3-4 (N.D. Ill. Jan. 26, 2009) (in TCPA suit, court relied on "common sense" to find proposed class too numerous to join).

The proposed Settlement Class in this case easily satisfies Rule 23's numerosity requirement. According to Flagship's records, there are 178,944 unique cellular numbers associated with the Settlement Class as of May 31, 2018. (Taylor Decl. ¶ 16).  Thus, there should be little question that joinder of all members of the proposed Class would be impracticable and that Rule 23(a)'s numerosity requirement is satisfied.  *See Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014) ("Defendants do not contend, and could not plausibly contend (given the number of purported recipients (4,521) of the June 17, 2006 fax advertisement), that plaintiff fails to satisfy the numerosity requirement."); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 313 (D.N.J. 2013) ("Plaintiff has shown that [defendant's] faxes were sent to 29,113 unique numbers. The class is so numerous that joinder of all members is impracticable.").

### ii.   Commonality is Satisfied

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Stated differently, commonality requires that the "named plaintiff share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  A common question is one that stems from "a common nucleus of operative facts." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 392 (E.D. Pa. 2001). Because commonality "requires only a single issue common to all members of the class, the requirement is easily met." *Id.*.

In this case, the members of the Settlement Class share the following common questions of law and fact: (1) whether Flagship used an automatic telephone dialing system when calling consumers; (2) whether Flagship acted willfully under the TCPA; and (3) whether a private right of action exists, jurisdiction is proper and statutory damages are available.   These common questions are susceptible to common answers through common proof.

### iii.   Typicality is Satisfied

The third requirement for certification under Rule 23(a) asks whether the Plaintiff's claims are typical of those of the proposed Settlement Class. Fed. R. Civ. P. 23(a)(3). The court looks to "whether the named Plaintiff's claims are typical, in common-sense terms, of the class." *Clarke v. Lane*, 267 F.R.D. 180, 197 (E.D. Pa. 2010). The typicality requirement is closely related to commonality and is similarly satisfied if the Plaintiff's claims arise "from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 159 (E.D. Pa. 2002). Factual differences,

including "relatively pronounced factual differences," will generally not be fatal to typicality if the legal theories are similar. *Id.*

As alleged in the Complaint, Plaintiff and the proposed Settlement Class share the same legal theories and their claims have the same essential characteristics.  That is, each Class Member received calls from Flagship using an automatic telephone dialing system and/or prerecorded or artificial voices.  Such claims therefore arise out of the same nucleus of facts such that, by pursuing his own claims, Plaintiff will necessarily advance the interests of the proposed Settlement Class.  Accordingly, Plaintiff's claims are sufficiently typical of those of the other Settlement Class members. Rule 23(a)(3)'s typicality prerequisite is therefore met.

iv.   Adequacy of Representation is Satisfied

Adequacy under Fed. R. Civ. P. 23(a)(4) is satisfied by showing that (1) class counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests. *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 532 (3d Cir. 2004).

Proposed Class Counsel have extensive experience litigating consumer class actions and have been appointed class counsel in numerous other cases. (Declaration of Sergei Lemberg ¶¶ 4-5; Declaration of Stephen Taylor ¶¶ 4-5).  Proposed Class Counsel have regularly engaged in major complex litigation involving the TCPA, have the resources necessary to conduct litigation of this nature, and have been appointed lead class counsel by courts throughout the country. *Id.*  Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (Lemberg Decl. ¶¶ 9-16, 18; Taylor Decl. ¶¶ 7-13, 15-18).

With regard to the second component, the key element is "the alignment of the interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012).  This component is designed

to ensure there are no intra-class conflicts and that the representatives have incentives to represent the claims of the class. *Id.* at 184. Here, Plaintiff received the same allegedly unlawful calls as Settlement Class Members. He has no interests that are antagonistic to or conflicting with persons in the Settlement Class. Moreover, because he is situated in the same manner as Settlement Class Members, Plaintiff has a built-in incentive to vigorously litigate the class claims. Thus, the adequacy requirement is met.

**B. Fed. R. Civ. P. 23(b)(3) Requirements**

In addition to satisfying Rule 23(a), a class must satisfy the requirements of Rule 23(b)(1), (2), or (3). *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Class certification pursuant to Rule 23(b)(3) requires the court to determine whether common questions of law or fact predominate and whether "the class action mechanism is the superior method for adjudicating the case." *In re Cmty. Bank of N. Va.*, 418 F.3d at 302.

"Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (citing *Gen. Tel. Co. of Sw.*, 457 U.S. at 159 n.15 (1982)); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014). Common issues predominate here because common questions in this case – particularly whether Flagship placed autodialed calls to consumers' cellular numbers – drive liability for each Settlement Class Member's claim.

The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *In re Cmty. Bank of N. Va.*, 418 F.3d at 309. A class-wide settlement of this action is superior to other available methods for the fair and efficient adjudication of this controversy because it is neither economically feasible, nor judicially efficient, for the hundreds of thousands Settlement Class

Members to pursue their claims against Flagship on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). By utilizing the class action vehicle, resolution of these claims may be provided without the need for numerous separate trials. Hence, a class action will achieve economies of time, effort and expense, as well as promote uniformity of decision as to persons similarly situated. Because this is a settlement class, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Additionally, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Certification for purposes of settlement is therefore appropriate.

## POINT II
## THE SETTLEMENT AGREEMENT
## SHOULD BE PRELIMINARILY APPROVED

In addition to certifying the Settlement Class, the Court must determine whether the proposed settlement warrants preliminary approval. There is a strong presumption in favor of settlements, especially in "'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a "two-step process." *Rivera v. Lebanon Sch. Dist.*, 2013 WL 877161, at *1 (M.D. Pa. Mar. 8, 2013). During the initial, preliminary approval step, the court considers whether the settlement "falls within the range of possible approval," such that notice of the settlement may be sent to the class members. *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472

13

(E.D. Pa. 2007).  In the second step, after notice of the proposed settlement is sent to the class and the court holds a final fairness hearing, the court considers whether the settlement is fair, reasonable, and adequate, and warrants final court approval. *Id.*

The central question on preliminary approval is whether there are obvious deficiencies in the proposed settlement or reasons to doubt its fairness, and whether the settlement is the result of arm's-length negotiation. *Id.*; *Klingensmith v. BP Prods. N. Am., Inc.*, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 28, 2008); *Hanlon v. Palace Entm't Holdings, LLC*, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012).  "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, preliminary approval is granted." *Manual for Complex Litig.*, § 30.41 (3d. ed. 1995.

The Parties' Settlement Agreement is the product of serious and informed arm's-length negotiations and falls well within "the range of possible approval" sufficient to warrant its preliminary approval.

## A. The Settlement Agreement Is the Result of Engaged, Arm's-Length Negotiations Overseen By An Experienced, Neutral Mediator.

"A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (internal quotation marks omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (holding presumption of fairness applied even though settlement negotiations preceded certification); *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001).

This Settlement is the product of extensive arm's-length negotiations by experienced counsel before a well-respected mediator and former judge. Plaintiff's counsel, Lemberg Law,

LLC, has been appointed class counsel in numerous consumer class actions and extensively litigate TCPA issues. (*See* Lemberg Decl. ¶ 5; Taylor Decl. ¶ 5)  The experience of Class Counsel demonstrates that the Settlement Class Members were well represented at the bargaining table. In addition, Flagship retained a highly regarded defense firm that has been involved in many complex class action lawsuits and settlements. Accordingly, there can be no serious dispute that both sides to the settlement were represented by experienced and highly competent counsel, which weighs heavily in favor of preliminary approval. *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007); *accord*, *Manual for Complex Litig.*, § 30.42 (3d ed. 1995) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel.").

The negotiations between these experienced attorneys were hard fought, adversarial, and occurred over the course of several months before and through Judge Rosen, an experienced and respected mediator. Such arm's-length negotiations weigh in favor of preliminary approval. *Mehling*, 246 F.R.D. at 473; *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004) (participation of respected mediator "gives [the court] confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner"); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion in negotiating process). Additionally, the negotiations were conducted with informal discovery in hand. Such discovery went to both the merits of class certification and class damages.  The informal discovery was then followed by formal discovery into the class composition.  (Taylor Decl. ¶¶ 15-18).

Thus, the Parties' agreement to settle this litigation reflects well-informed and engaged arm's-length bargaining with the assistance of a highly experienced mediator.  The Settlement

Agreement is not the product of collusion; to the contrary, it reflects the independent judgment of counsel for both Parties that its terms are fair and reasonable.

**B.   The Settlement Agreement Is a Preferable Alternative to the Risks Through Continued Litigation.**

Plaintiff believes that his claims against Flagship are strong, well supported by applicable law, and if pursued, would result in a judgment in favor of the Settlement Class. Notwithstanding this, Plaintiff recognizes the certainty of recovery the proposed settlement represents.

While Plaintiff and his counsel believe the facts of this case make class certification appropriate, they are also aware that Flagship was prepared to argue that class certification was inappropriate and vigorously defend this action in this Court or on appeal.  As in any case, there is a substantial risk of losing at trial. And, even if Plaintiff did prevail, any recovery could be delayed for years by an appeal or series of appeals. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

i.   The Settlement Agreement Does Not Provide Unwarranted Preferential Treatment to Any Segment of the Class.

The Settlement Agreement allows each Class Member to claim a share of the Settlement Fund. All Class Members submitting claim forms will receive the same *pro rata* share of the Settlement Fund; there are no separate awards for different segments of the Class.

Plaintiff also will seek an Incentive Award of up to ten thousand dollars ($10,000.00). Plaintiff's counsel believes that Plaintiff's right to seek an incentive award for bringing and litigating this case on behalf of the Class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for*

16

*Complex Litig.*, § 21.62 n.971 (4th ed. 2004). "'Courts routinely approve incentive awards to compensate named Plaintiff for the services they provided and the risks they incurred during the course of the class action litigation.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re So. Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997)).   An Incentive Award of up to $10,000.00 is reasonable and fair to Plaintiff for his efforts on behalf of the Class and is within the range of awards approved in other class actions.  *See, e.g.*, *Lees v. Anthem Ins. Cos. Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving $10,000.00 incentive award and collecting cases); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *19 (approving incentive awards of $25,000.00 to each of five named plaintiffs); *In re Residential Doors Antitrust Litig.*, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (approving $10,000.00 incentive awards to each of four named plaintiffs).

        ii.    <u>The Settlement Agreement Provides a Substantial Benefit to Settlement Class Members and Falls Within a Range of Possible Approval.</u>

The Settlement Agreement requires Flagship to pay $4,000,000.00 into the Settlement Fund, out of which all eligible Settlement Class Members will receive a *pro rata* share of cash payments. Class Members will have every opportunity to claim their right to a share. If a Class Member does not claim his share or does not cash a check, then those funds will be distributed to a *Cy Pres* Recipient approved by the Court.  Assuming the Court grants the requested Attorney's Fees and Costs of 1/3 of the Settlement Fund and the $10,000.00 Incentive Award, and assuming the estimated administrative costs of $167,927.00, Settlement Class Members will share $2,488,739.67.

Assuming a 3% response-rate[4], Class Counsel estimates that each Class Member will receive approximately $415 ($2,488,739.67 divided by 6,000 (6,000 is 3% of 200,000)).[5] If there is a 10% response-rate, each Class Member will receive approximately $125 ($2,488,739.67 divided by 20,000 (20,000 is 10% of 200,000)). *These are estimates only*; the exact figures and will depend on the total number of Valid Claims received, the costs of Notice and Settlement Administration, and the Court's disposition of the Settlement Fund. What these estimates do show is that *this* Settlement is comfortably in the range of settlements deemed fair and reasonable by many Courts in TCPA class actions. *See, e.g.*, *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) (approving TCPA settlement of $7,483,600.00 gross settlement fund, where counsel estimated $140.86 recovery per claiming class member). For the purposes of clarity, Class Counsel has prepared the following table of TCPA settlements with range in benefit to claiming class member of $20.00 to $200.00:[6]

| CASE NAME | AMOUNT PER CLAIMANT |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Cabiness v. Educational Financial Solutions, LLC*, No. 16-CV-01109-JST, 2018 WL 3108991, at *8 (N.D. Cal. June 25, 2018) | $20.00 |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |

[4] "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014); *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) (same).

[5] 200,000 represents an estimate of unique numbers called through preliminary approval.

[6] This is a sample of TCPA settlements and is generally representative. There are several settlements where claimants received more than $200.00 per claim or less than $20.00.

18

| | |
|---|---|
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Leung v. XPO Logistics, Inc.*, No. 15 C 03877, 2018 WL 2432159 (N.D. Ill. May 30, 2018) | $100.81 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.,* 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |

| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |
|---|---|

The Settlement here is more than reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable and adequate. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery and approving $34.60 per claiming member); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant).

Finally, Class Counsel will request 1/3 of the Settlement Fund as Attorney's Fees and Costs. Courts in the Third Circuit find fees as high as 45 percent of a common fund appropriate and routinely award a one-third fee. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015) (collecting cases); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *9 (E.D. Pa. Apr. 11, 2007) (same); *see also In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (approving 30% in fees of common fund of $10.25 million and stating "the settlement fund is not so large as to support a percentage <u>smaller</u> than thirty percent") (emphasis supplied).

Because the Settlement Agreement was negotiated at arm's-length by experienced counsel after extensive discovery and the aid of an experienced, neutral mediator, because the Settlement does not grant unwarranted preferential treatment to different Settlement Class Members, and because it is reasonable and easily falls within the range of possible approval, this Court should preliminary approve the Settlement Agreement.

<u>POINT III</u>
<u>THE PROPOSED NOTICE AND NOTICE PLAN ARE REASONABLE</u>

In addition to preliminarily approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class Notice and notice plan. Pursuant to Rule 23(e), the Court is required to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Although the question of what constitutes reasonable notice is left to the discretion of the Court, Rule 23 provides that the best notice practicable "include[s] individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here. *See Settlement Agreement*, Art. IV, ¶ 3; *see also* Declaration of Anya Verkhovskaya ¶¶ 6-23.

First, the proposed Notice (Exhibit 3 to the Settlement Agreement) communicates the information required by Rule 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a process that the Parties anticipate will provide individual notice by mail to the vast majority of Settlement Class Members. Flagship records contain the telephone numbers of all of the calls placed to the Settlement Class Members. The Settlement Administrator will use those telephone numbers, and other identifying information provided by Flagship, to perform a reverse lookup of Class Members' current or last-known address information, and will then cross-reference this information with the United States Postal Service's change of address database to confirm its accuracy.

Mailed notice is presumptively reasonable, and satisfies the requirements of due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (finding the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"). Moreover, numerous courts have approved mailing notice to class members via a postcard. *See, e.g., Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *6-7, 29 (S.D. Ohio Apr. 4, 2014) (finally approving settlement with postcard

21

notice sent to majority of class); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving settlement with postcard notice); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (finally approving settlement with postcard notice); *Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619, at *11 (S.D. Cal. Feb. 5, 2013) (preliminarily approving settlement with postcard-type notice); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *4 (D.N.J. Sept. 10, 2009) (preliminarily approving settlement with postcard notice for non-current customers and bill stuffers for current customers), *aff'd*, 423 F. App'x 131 (3d Cir. 2011); *In re Mut. Funds Inv. Litig.*, 2011 WL 1102999, at *1-2 (D. Md. Mar. 23, 2011) (finding postcard notices satisfy Rule 23); *Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360, 1375-77 (S.D. Fla. 2007) (finally approving settlement with postcard notice).

In addition, the Settlement Administrator will maintain a case-specific website to post relevant documents (the Settlement Agreement, the Complaint, the Preliminary Approval Order) in addition to the Long Form Class Notice.  Further, the Settlement Administrator will establish and maintain a telephone number that Settlement Class members can call to receive information via recorded messages or to request an additional Notice.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court enter an Order: (i) certifying the Settlement Class as defined in the Parties' Settlement Agreement, (ii) appointing Plaintiff as the Settlement Class Representatives, (iii) appointing the undersigned as Class Counsel, (iv) preliminarily approving the Parties' Settlement Agreement, (v) approving the form and methods of the proposed notice, and (vi) granting such other and further relief as the Court deems reasonable and just.

Dated: July 12, 2018                         Respectfully submitted,

                                             Robert Ward, *individually and on behalf of all*
                                             *others similarly situated*,

                                    By:      */s/ Stephen Taylor*
                                             Sergei Lemberg
                                             Stephen Taylor
                                             Lemberg Law LLC
                                             43 Danbury Road
                                             Wilton, CT 06897
                                             Tel: 203.653.2250
                                             Fax: 203.653.3424

## <u>CERTIFICATE OF SERVICE</u>

       I, Stephen Taylor, an attorney, certify that, on July 12, 2018, the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of such filing to the following:

Gerald E. Arth
Steven J. Daroci, II
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103

*/s/ Stephen Taylor*
Stephen Taylor