|  |  |
|---|---|
| Robert Ward, *on his own behalf and on behalf of all others similarly situated*, | : |
|  | : |
|  | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 2:17-cv-02069-MMB |
|  | : |
| Flagship Credit Acceptance LLC, | : |
|  | : |
| Defendant | : |
|  | : |
|  | : |
|  | : |

## SUPPLEMENTAL SUBMISSION REGARDING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEY FEE AWARD

Settlement Class Representative Robert Ward ("Plaintiff" or the "Named Plaintiff"), by and through his undersigned counsel, respectfully submits this supplemental submission to address matters raised by the Court during the April 2, 2019, Final Approval Hearing.

Plaintiff respectfully submits that the Court's concerns regarding the approval of fees and costs are best addressed with an eye towards the Third Circuit's admonition that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Here the Court found that Class Counsel did a good job in litigating and negotiating the Class Settlement Agreement. That good job resulted in a substantial class settlement, notice to hundreds of thousands of consumers of their rights under the Telephone Consumer Protection Act and their rights to participate in this settlement. The result was a very high participation rate (over 20%), four (4) opt outs and no objections. The Settlement Class here is getting broad substantial

benefits and it is getting them before years and years of litigation. With these considerations in mind, we address the matters highlighted by the Court.

I.     A *Pro Rata* Distribution of Equal Amounts is Customary in Telephone Consumer Protection Act ("TCPA") Common Fund Class Settlements

First, the Court inquired about whether a *pro rata* distribution is common in TCPA class cases. A *pro rata* distribution to claiming Settlement Class Members, meaning each member who submits a valid claim receives an equal amount from the Settlement Fund, is customary in TCPA common fund class settlements. *See, e.g.*, *Wright v. Nationstar Mortage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approving pro rata distribution of $45 per claiming class member, overruling objection that disbursement was not on a per-call basis, and amount was in line with other cases) (collecting cases); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (claiming members recovered $34.60); *Estrada v. iYogi, Inc.*, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, 12-cv-1118, Doc. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, 08-cv-00248, Doc. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving award of $30 per claiming member).

Here, the Notice Plan informed the Settlement Class that funds would be dispersed in an equal amount to claiming Class Members. The Notice Plan provided this information in multiple places. *See, e.g.*:

- "You may be entitled to receive an equal share of the fund. The final cash payment for Class Members will depend on the total number of valid and timely claims filed by all Class Members." *The Post Card Notice* (Doc. No. 25-4 at. 6).[1]

---

[1] Doc. No. 25-4 is the declaration from the Settlement Administrator and the exhibits thereto. It is reattached here for the Court's convenience.

- "The final cash payment will depend on the total number of valid and timely claims filed by all Class Members. Each claiming Class Member will be entitled to an equal share of the Settlement Fund ($4,000,000.00), after deductions . . ." *Id.* at 7.

- "By completing and submitting a Claim Form you may recover an equal share of the Settlement Fund. This is the only way to claim and receive from the Fund." *The Long Form Notice* Option 1 (Doc. No. 25-4 at 9).

- "The final cash payment will depend on the total number of valid and timely claims filed by all Class Members. Each claiming Class Member will be entitled to an equal share of the Settlement Fund, after deductions from the Fund for administrative costs, attorney's fees and expenses and any incentive award to the Plaintiff . . .

  After all valid Claim Forms are counted, the Settlement Administrator will provide each claiming Settlement Class Member their share of the Settlement Fund after the deductions above" *Id.* at 10-11 under "How do I recover?"

The Long Form Notice was available on the Settlement Website which was visited more than 210,600 times. Peters-Stasiewicz Declaration (Doc. No. 25-4) ¶ 15.

The Court approved, "as to form and content" both the Postcard Notice and Long Form Notice on September 18, 2018. (Doc. No. 21 ¶ 12).

Because *pro rata* distributions are customary in TCPA class action settlements, the Settlement Class was informed of this method of distribution and no members objected, a *pro rata* distribution here is fair and reasonable.

## II. The Participation Rate by Settlement Class Members was High

Second, the Court inquired about the participation by the Settlement Class here and whether it was high or low. "The prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) (*quoting Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012)); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043–44 (S.D. Cal. 2015) (claims rate of 7.7% is "higher than average" in TCPA action and "although Class Members are only

expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement."); *James v. JPMorgan Chase Bank, N.A.*, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) (participation rate of five percent "typically occurs in a TCPA class action"); *Snyder v. Ocwen Loan Servicing, LLC*, 2018 WL 4659274, at *3 (N.D. Ill. Sept. 28, 2018) ("The claim rate in this case was about 16 percent, which is far higher than the usual TCPA settlement").

In total, 67,255 Settlement Class Members submitted valid claims.[2] This equals a participation rate of 20.5%.[3] If the Court approves the requested fees and costs of one-third, the incentive award and the costs of administration, claiming Settlement Class Members will each recover $35.[4] This is a very high claims rate and the benefits to the class will be widely dispersed far more than in an average TCPA class settlement.

III.     The Final Costs of the Settlement Administrator

Third, the Court required greater detail and confirmation regarding the administrative costs of this settlement. The final costs of the Settlement Administrator including the costs of disbursing the Benefit Checks are $282,393.00. The Settlement Administrator's invoices are attached as Exhibits A & B to the accompanying declaration of Sergei Lemberg with Exhibit A as the invoices themselves and Exhibit B as the summary.

---

[2] At the time of the Final Approval Hearing, there were 10,731 claims still in process and undergoing review by the Settlement Administrator. Peters-Stasiewicz Declaration (Doc. No. 25-4) ¶ 18; Final Approval Memorandum (Doc. No. 25-3) pg. 3 fn. 1). The Settlement Administrator has confirmed 9,937 of those submissions are valid claims and are added to the prior 57,318 valid claims.

[3] Non-duplicative claims divided by the approximate number of Class Members. (57,318/327,924).

[4] $4,000,000.00 – $1,333,333.33 (fees and costs) – $10,000.00 (Incentive Award) – $282,393.00 (Admin. Costs) = $2,374,273.66 / 67,255 (claims) = $35.30

This is more than the assumed costs in the Final Approval Papers. *See e.g.,* Doc. No. 25-3 pg. 6 (assuming administrative costs of $167,927.00). The reason for the discrepancy is that the claims rate by the class was higher than originally assumed thus the costs associated with (1) reviewing claims and (2) administrating fund dispersal (paying for the printing and mailing of Benefit Checks) were greater. In total though the administrative costs are reasonable as they come out to less than $1 dollar per Settlement Class Member ($282k/327k members) or $4.19 per claiming class member ($282k/67,255).

IV.     Awarding One-Third of the Settlement Fund in Fees and Costs to Class Counsel is Appropriate

Fourth, Class Counsel's requested fee here is appropriate and justified. Class Counsel has requested a fee award of $1,333,333.33 as 1/3 of the Settlement Fund. With a lodestar of $356,700 this equals a multiplier of 3.71. (Motion for Fees (Doc. No. 26-1 pg. 14). In common fund cases, a 1/3 fee award is common and customary in the Third Circuit. *See, e.g.*, *Williams v. Sweet Home Healthcare, LLC*, 2018 WL 5885453, at *6 (E.D. Pa. Nov. 9, 2018) ("More specifically, fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million—funds which are comparatively smaller than many common funds."); *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (approving 30% in fees of common fund of $10.25 million and stating "the settlement fund is not so large as to support a percentage smaller than thirty percent"). So too, a multiplier of 3.71 is within the range of approval in the Third Circuit. *See, e.g. Kelly v. Bus. Info. Grp., Inc.*, 2019 WL 414915, at *20 (E.D. Pa. Feb. 1, 2019) ("The Third Circuit recognized in *In re Prudential* that lodestar multipliers 'ranging from one to four are frequently awarded in common fund cases.'") (collecting cases and quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 341 (3d Cir. 2005)).

The Court's concern at the final approval hearing was whether a 1/3 fee was appropriate here where the case settled early in proceedings. It is appropriate: "[t]here is an overriding public interest in settling class action litigation, and it should therefore be *encouraged*." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (emphasis supplied); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

That Class Counsel efficiently identified key issues, made their case strongly to Defendant early in the case and proceeded to efficiently negotiate a good settlement for the benefit of the class should and must be encouraged. If it is not, or if early resolutions can be held against Class Counsel in Common Fund fee applications[5], perverse incentives are created which can discourage negotiated resolution. Such negative incentives were identified by the 1985 Third Circuit Task Force which discussed the problems with the lodestar method and is why the "percentage-of-recovery method has long been used in this Circuit." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001). As the Third Circuit Task Force found:

> *Lindy* [a lodestar approach] creates a disincentive for the early settlement of cases. Because of *Lindy's* emphasis on hours worked, lawyers-including defense counsel who typically bill their clients on an hourly basis-have little or no incentive to settle cases at the earliest appropriate opportunity. To the contrary, there appears to be a conscious, or perhaps unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar.

*Court Awarded Attorney Fees*, 108 F.R.D. 237, 248 (1986).

In *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) the Court faced a similar issue. There, the settlement fund was $4.9 million dollars and Class Counsel negotiated

---

[5] TCPA settlements are common fund settlements where the statute does not provide for attorneys' fees or costs. *See, e.g., Doyle v. Midland Credit Mgmt. Inc.*, 2017 WL 6944789, at *3 (D.N.J. Dec. 1, 2017) ("while [the] FDCPA is a fee shifting statute, the TCPA is not").

the resolution of the FLSA class claims early in the ligation with only informal discovery. Class counsel sought a 1/3 fee with a lodestar multiplier of 6.3. The Court found that it would be incorrect to penalize plaintiffs' counsel for achieving an early settlement:

> [w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial. *See Wal–Mart Stores,* 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino,* 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie v. Merchants Bank,* 166 F.3d 456, 461 (2d Cir.1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

So too here, the length of intensity of the litigation should not cause this Court to arbitrarily lower the percentage of the fund awarded to Class Counsel especially where early settlements should be "encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

Moreover the length and intensity of the litigation should not weigh against Class Counsel's fee when the settlement amount is substantial. *Beckaman*, *supra*. The total fund is here $4,000,000. As noted, if the Court approves the requested fees, costs and the incentive award claiming Settlement Class Members will each recover $35. This itself is "within the range of recoveries" in a TCPA class action. *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp.3d 781, 789 (N.D. Ill. 2015) (approving $34.60 per claimant). But the overall value of the per-claimant recovery cannot be measured without considering the high 20.5% claims rate (*In re Capital One supra* had only a 7.8% participation rate). If 5% of class members submitted valid claims here, each would be recovering $141 which would put this settlement on the higher end of TCPA class settlements by a per-claimant measure. Thus, here, while the per-claimant recovery is $35, that recovery is very broad and far above the average in TCPA class actions.

This Court's recent decision awarding fees for the "Indirect Purchasers" in *In re Domestic Drywall Antitrust Litig.*, 2019 WL 1258832 (E.D. Pa. Mar. 19, 2019) is also instructive. While the Court awarded one-third of the settlement fund in fees and costs, the Court was critical of the work performed by the class counsel: "the performance of class counsel in their appearances before this Court have been deficient in many respects." *Id*. at *2. Further, the Court had previously denied class certification and advised that "one of the reasons the Court approved the Class settlement" was to essential provide relief to the defendants who "were entitled to cessation of the litigation." Indeed, settlement of the Indirect Purchaser class there could be considered a "nuisance value" resolution when compared with the $200 million dollar settlement achieved on behalf of the Direct Purchasers. *Id*. at *1.

But the case at bar is not a price-fixing anti-trust MDL, this is not a nuisance settlement, nor is it fair to compare Class Counsel's result here to the Indirect Purchaser's counsel in *Domestic Drywall*. If there is any comparison to be made is that Class Counsel here acted swiftly and expertly compared to the Indirect Purchasers. Class Counsel here expended 684 hours to achieve a $4 million dollar settlement. The Indirect Purchasers' counsel, on the other hand, expended *24,552* hours over years to achieve a $16.95 million dollar settlement. *Id*. They thus spent thirty-five times the number of hours but achieved only four times the result – not to mention the amount of hours surely expended by the Court on the Indirect Purchasers' claims. Plaintiff respectfully submits that how Class Counsel litigated and negotiated this case should be encouraged and incentivized.

Finally, while the docket in this matter may be uncluttered, that is not to say that Class Counsel did not engage in extensive work on behalf of the Settlement Class. *See* Lemberg Declaration, Doc. No. 26-2, ¶¶ 10-11. Further, such work continues as Class Counsel continues to address Class Member inquiries. *See* Taylor Declaration, Doc. No. 26-4, ¶¶ 19-20.

V.     The Hourly Rates Submitted as Part of Class Counsels' Lodestar are Appropriate

Class counsel lodestar is based on the following rates: Sergei Lemberg at $650 per hour, Stephen Taylor at $550 per hour, Josh Markovitz at $300 per hour and a paralegal rate of $125 per hour.

A court determines a reasonable hourly rate by assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing market rate is shown through "range of rates approved by courts in this District." *Leary v. McGowen Enterprises, Inc.*, 2018 WL 4961593, at *6 (E.D. Pa. Oct. 15, 2018).  Here, the rates requested by Class Counsel here are within the range of rates approved in the Eastern District of Pennsylvania. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216–17 (E.D. Pa. 2011) (accepting rates of $125 to $175 for paralegals and $485 to $700 for partners); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 260 (E.D. Pa. 2011) (accepting rates of $650 for partners and $175–$225 for paralegals in a consumer class action litigation) (citing *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 422 (E.D. Pa. 2010)); *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *14 (E.D. Pa. Aug. 31, 2018) (approving blended rate of $685 in specialized ERISA class action); *see also, Moore v. GMAC Mortg.*, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (finding reasonable rates between $325 and $860 per hour); *Flores v. Express Servs., Inc.*, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 30, 2017) (approving rates of $225 to $725 per hour for attorneys and $180 per hour for paralegal staff).

The skill, experience and qualifications of counsel, as set forth in their declarations, establish the requested rates are appropriate here. Counsel Sergei Lemberg is a 2001 graduate of the University of Pennsylvania School of law and the principal of Lemberg Law.  *See* Lemberg

Declaration, Doc. No. 26-2, ¶ 1. Counsel Stephen Taylor is a Senior Attorney at the firm, manages the firm's class action practice and is a 2007 graduate of Tulane University School of Law. *See* Taylor Declaration, Doc. No. 26-4, ¶¶ 1-3. Both Lemberg and Taylor have been certified as class counsel in myriad class action cases, in settlement and contested, under the TCPA and other laws. *See* Lemberg Declaration, ¶ 5; Taylor Declaration ¶ 5.

Sergei Lemberg and Stephen Taylor have been awarded similar rates to those they seek here in TCPA class actions. Three years ago, in *Duchene vs. Westlake Services, LLC*, 13-cv-01577 (W.D. Pa.), the Court approved fees of $500 and $450 for Mr. Lemberg and Mr. Taylor respectively. (Entry # 113-1 at ¶ 13 requesting fees of $500 & $450 per hour; Entry #140 at ¶ 18 approving fee request). At the final approval hearing, Judge Hornak found that those rates were reasonable and, if anything, low. (Entry #142 at Tr.47:16-19 ("Mr. Lemberg and Mr. Taylor, and I'm not encouraging you to do anything different, but I find that the hourly rates that you have quoted in doing your charges here were not by any measure off the charts."). Three years later, their request of rates of $650 and $550 respectively is entirely reasonable and in line with the market rate in the Eastern District of Pennsylvania for specialized class counsel of their skill and experience.

Mr. Markovitz is a 2015 graduate of Benjamin N. Cardozo School of Law and focuses on consumer protection class action cases. *See* Lemberg Declaration, ¶ 15. His billing rate submitted here of $300 per hour is commensurate with his experience and in line with rates for more junior counsel. *See, e.g.*, *Moore,* 2014 WL 12538188 at *2; *Flores*, 2017 WL 1177098 at *4.

For the foregoing, Plaintiff respectfully requests that the Court award the requested $1,333,333.33 in fees and costs, approve the $282,393.00 in administrative costs disbursement and order the Class Fund be disbursed in accordance with the Settlement Agreement.

Dated: April 16, 2019

Respectfully submitted,

*For the Plaintiff*

By:  */s/ Sergei Lemberg*

Sergei Lemberg
LEMBERG LAW LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

By:  */s/ Stephen Taylor*

Stephen F. Taylor
LEMBERG LAW LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424