# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT WARD,** *on behalf of himself and all others similarly situated*<br><br>v.<br><br>**FLAGSHIP CREDIT ACCEPTANCE LLC** | CIVIL ACTION<br><br>NO. 17-2069 |

## MEMORANDUM AND ORDER RE: CLASS ACTION SETTLEMENT

**Baylson, J.** May _9, 2019

Upon further review of the Motion for Final Approval of Class Action Settlement, and the supplemental materials submitted, the Court concludes that it is necessary for Plaintiffs, and defense counsel if they choose to file anything, to demonstrate that the settlement in this case ($4,000,000) is "fair and reasonable" to the members of the class.

This case is somewhat unusual because of the fact that no Answer was ever filed to the Complaint, and the Court never held a Rule 16 pretrial conference. Rather, counsel stipulated for extensions of time to respond to the Complaint, lasting approximately fifteen months. At the end of the last extension, Plaintiffs filed a Motion for Preliminary Approval, which noted that there had been extensive negotiations between counsel and exchange of data, and that Plaintiffs had taken one deposition of a technical employee of the Defendant. The Court appreciates that there were substantial negotiations and that the parties engaged an experienced mediator, Honorable Joel Rosen, former U.S. Magistrate Judge for the District of New Jersey. However, in many, if not most, decisions approving large class settlements, the Court has had exposure to the controversy, and the underlying facts, and legal issues. In this case, this factual background is missing.

In the Motion for Preliminary Approval, at pages 18-20, there is a list of prior TCPA settlements, showing the amount per claim ranging from a low of approximately $20 to a high of $200. However, this case list does not show the total amount of settlement in any of these cases. The Motion shows one TCPA settlement of approximately $7.5 million, but this is the only indication of a reported settlement amount.

In the Memorandum supporting the Motion for Final Approval, at page 14, counsel cite another TCPA settlement for $34 million, in a class of more than 32 million individuals. In the Memorandum in support for Attorneys' Fees, at page 7, counsel cite TCPA settlements worth $3 million and $10 million. What makes $4 million reasonable and fair in this case?

After review of all of the papers submitted by Plaintiffs, there are insufficient details to allow the Court to conclude that this settlement is fair and reasonable. A supporting Declaration from the class administrator indicates that based on the mailings and returns by the post office, there are approximately 316,000 class members in this case who received notice. The number of claims filed are approximately 57,000 showing a return of approximately 17%, which counsel assert is a very high participation rate.

As the Court discussed with counsel at the recent hearing, also of concern in this case is the very large amount of attorneys' fees being sought as a percentage of recovery, compared to the anticipated net return to each class member who filed a claim. As stated in other decisions, every dollar going to counsel is one less dollar doing to the class. Although Plaintiffs' counsel referred to this as a "pro rata" claim process, the Court understands the term "pro rata" to refer to a proportionate share of a settlement fund relative to others depending on variable factors. In this case, the return is rather characterized as "per capita" because each and every class member

who filed a claim will be getting the same amount. The high percentage rate may be due to this fact, but is not necessarily probative as to the fairness of the settlement.

The Court will require additional detailed information as to the strength or weakness of the Plaintiffs' claims, and the Defendant's anticipated defenses, the Defendant's resources, and a projection of damages that Plaintiffs would have been able to prove if the case had gone to trial. The class papers satisfactorily discuss the legal issues, but there is very little factual information.

Because the statute in this case provides for an automatic damages recovery of $500 per telephone call, it is virtually axiomatic that any post-trial class judgment in a TCPA case is likely to bankrupt the Defendant. This is obviously a powerful inducement for Defendants to reach a settlement. Although counsel indicated there was production of data by the Defendants, there are no specifics as to the nature or volume of the Defendant's business, and because no Answer was ever filed, the Court has no idea what the Defendant's position is as to the detailed allegations of the Complaint.

As counsel recognizes, the seminal case on this issue in the Third Circuit, <u>Girsh v. Kepson</u>, states the non-exclusive factors that the District Court must use to evaluate the fairness of a class settlement are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975).

The Third Circuit added additional factors in In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions to include, where appropriate:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d 283, 323 (3d Cir. 1998).

The eighth and ninth Girsh factors are most relevant to the analysis of the reasonableness of this settlement. "In evaluating the eighth and ninth Girsh factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case…. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial.'" In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 440 (3d Cir. 2016), as amended (May 2, 2016) (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004)).

The seventh Girsh factor is also relevant, but where no evidence is put forward demonstrating that Defendant's financial situation has limited the amount of the settlement, that factor is neutral. See Huffman v. Prudential Ins. Co. of Am., No. 2:10-CV-05135, 2019 WL 1499475, at *5 (E.D. Pa. Apr. 5, 2019) (Leeson, J.); Galt v. Eagleville Hosp., 310 F. Supp. 3d

483, 495 (E.D. Pa. 2018) (Rufe, J.) ("[T]he parties have not presented evidence concerning Defendant's ability to withstand a greater judgment, and thus this factor is neutral in this case.")

The Third Circuit addressed these Girsh factors most recently in In re New Jersey Tax Sales Certificates Antitrust Litig., 750 F. App'x 73 (3d Cir. 2018). In that case, an objector to a $9.59 million antitrust class action settlement concerning New Jersey tax sale certificates challenged the district court's final approval of the settlement. Judge McKee, writing for the Court, noted first that a settlement must be "fair, reasonable, and adequate" in order to be settled. 750 F. App'x at 77 (citing Fed. R. Civ. P. 23(e)). When the Court reviewed the eighth and ninth Girsh factors, it first discussed the evidence before district court, and then addressed the objector's argument "that the strength of the case did not justify the settlement because it constituted a mere 2.5 percent of the best possible recovery, which she posited to be $400 million, a figure the court 'accepted' in its final approval order." Id. at 81. The Court found that that calculation mischaracterized the scope of liability and was "overbroad." Id. at 81-82. The court then wrote

> More critically, [Appellant] provides no authority for her claim that a settlement cannot be reasonable if it constitutes a certain percentage of the best possible recovery. In fact, we have said that an "evaluating court must ... guard against demanding too large a settlement" since, "after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."

Id. at 82 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 806 (3d Cir. 1995)).

In another recent case, the Third Circuit reviewed the district court's approval of a class settlement in an action by property owners in Jersey City against manufacturing plant owners and operators who allegedly contaminated Plaintiffs' homes. Halley v. Honeywell Int'l, Inc., 861 F.3d 481 (3d Cir. 2017). The total settlement fund in that case was $10,017,000, and after

5

attorneys' fees, costs, administration expenses, and the incentive award, each of the 2,085 properties in the class would only receive $2,926.00. 861 F.3d at 487. Judge Scirica, writing for the Court, noted that "[w]hile the amount of the recovery for each class member appears troubling in light of the likely diminution of property values should liability be proved, five years of extensive fact discovery produced little evidence suggesting that liability could be established." Id. at 491.

With respect to the eighth and ninth Girsh factors, the Court held that the district court did not abuse its discretion when it approved the settlement despite the fact that "the settling parties had not identified a specific dollar amount for a best possible recovery." Id. at 490. Rather, the Court concluded that "in a case such as this, where valuation of plaintiff's claims is difficult or impossible without expert testimony, and expert reports have not been exchanged or depositions taken, the District Court need not delay approval of an otherwise fair and adequate settlement if it has sufficient other information to judge the fairness of the settlement." Id. at 493. Moreover, the Court noted that "[d]istrict courts may approve settlements in which 'calculating the best possible recovery for the class in the aggregate would be exceedingly speculative" if the reasonableness of the settlement nevertheless can be "fairly judged." Id. (quoting Prudential, 148 F.3d at 322).

**ORDER**

For the above reasons, counsel shall file additional factual material in response to this Order within ten (10) days. An extension will be granted upon request, indicating how much additional time is necessary to secure and file the requested information.

**BY THE COURT:**

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON**
**United States District Court Judge**

O:\CIVIL 17\17-2069 Ward v Flagship Credit\17cv2069 Order re Class Action Settlement.docx