| | |
|---|---|
| Robert Ward, et al | : |
|         Claimant | : |
| . v. | :   JAMS ARBITRATION |
| | :   REF # 1450006354 |
| Flagship Credit Acceptance, LLC | :   EDPA No. 17-2069 |
|         Respondents. | : |

## SETTLEMENT REPORT

**Counsel for Claimants:**
Sergei Lemberg, Esquire
Stephen Taylor, Esquire
Lemberg Law LLC
43 Danbury Rd.
3rd Floor
Wilton, CT 06897
Telephone: 855-301-2100     Fax: 203-653-3424

**Counsel for Respondent:**
Gerald E. Arth, Esquire
Steven Joseph Daroci, Esquire
Fox Rothschild LLP
2000 Market St.
20th Floor
Philadelphia, PA 19103
Telephone: 215-299-2000     Fax: 215-299-2150

**Settlement Master:**
Justice Jane Cutler Greenspan (Ret.)
JAMS
1717 Arch St., Suite 3810
Philadelphia, PA 19103
Telephone: 215-246-9494 Fax: 215-246-0949

**Case Manager:**
Alyssa DeTreux
JAMS
1717 Arch St., Suite 3810

Philadelphia, PA 19103
Telephone: 215-246-9494 Fax: 215-246-0949

## SETTLEMENT REPORT

On July 15, 2019 the Honorable Michael Baylson appointed the undersigned as a Master to prepare a Report and Recommendation to assist the Court in determining whether the class action settlement in the above-captioned case should be approved as fair and reasonable and as meeting the Third Circuit requirements. This order was amended and reissued on August 9, 2019.[1] Thereafter both parties submitted confidential statements to the Master and an in-person meeting with the Master was held on September 20, 2019.

In accordance with the Judge's order, the Master met with Class Counsel for the plaintiff class and Flagship Credit Acceptance LLC (Defendant herein) separately and then jointly. There, each side was asked to submit to the Master, within two weeks' time, brief statements supporting certain assertions made at the time of the September 20 meeting. Those statements were submitted timely.

Upon review of the pleadings, motions and memoranda filed in this matter, as well as submissions to the Master, it is my recommendation that the class action settlement be approved as fair and reasonable and as meeting the Third Circuit requirements set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3rd Cir. 1975).

With regard to the Girsh factors, Class Counsel has extensively discussed this settlement's satisfaction of each of those factors. See pages 7 through 15 of Exhibit B to the Motion For Final Approval of Class Action Settlement filed March 19, 2019. The review by the

---

[1] The Court informed the Master that the issue of attorneys' fees and named plaintiff's fee need not be addressed in this assignment.

Master has verified the satisfaction of these factors and the following discussion provides additional support for the reasonableness and fairness of this settlement within the Girsh rubric.

The Court quite properly is requiring this review to be assured that Class Counsel has not "sold the case short." See Snyder v. Ocwen Loan Servicing, LLC., No. 16-8677, 2018 W.L. 4659274 at 6 (N.D. & U., 9/28/18). It is noteworthy that in that case the Court was concerned with the lack of information provided to it regarding defendant's ability to pay and the dismissal of the "bank" defendants for no consideration whatsoever. Additionally, the amount requested by counsel[2], caused the Court to "decline approval of the settlement in its present form." (Snyder, supra, at 14 (italics supplied).

The issue regarding the banks is of course not present here. The concern regarding the ability of Defendant to pay a substantial verdict is always of concern in TPCA cases where the per person liability is normally $500 and possibly $1,500. At the time of the settlement in the instant case, Class Counsel was shown Ernst and Young certified audited financials of the Defendant and was alerted to the fact that the company operated at a significant loss during the two fiscal years preceding the settlement.[3] Only in the last year has the company begun to operate in the black. Given the type of financial institution that it is, a sub to mid-prime lender, any downturn in the economy could significantly reverse that gain and result in any increased amount creating significant harm. Those financials were shown to and verified by the Master. Further, during the settlement process Class Counsel was permitted to meet with and question the company controller. Accordingly, although the settlement amount, $4,000,000, is a very small percentage of the $2.5 billion of listed assets of the company, the margin upon which it operates is slim and was properly investigated and taken into account by Class Counsel. Any

---

[2] The amount requested by counsel, $5,289,250.00, as well as the amount of $25,000.00 per named plaintiff seemed particularly troubling to the Court in that case.

[3] In 2016 the loss was $27.3 million and in 2017 it was $3.5 million.

further examination into the Defendant's financial position would have required a forensic investigation which was beyond the Court's mandate.

Moreover, when compared to other TCPA class action settlements, the number here is extremely reasonable. For example, TCPA cases have involved companies with billions and even perhaps trillions in assets. These companies can easily withstand the $500 per person statutory penalty. Yet in the cases involving J.P. Morgan Chase in the Middle District of Florida, a $3.5 million settlement was approved against a $337,000,000 possible statutory penalty. In Sanders v. Citizens Bank, where the class was over one million people, a $4.5 million settlement was approved. In a case involving American Express, a settlement of $8.25 million was approved for 798,000 claims from class members. Gerhrich v. Chase Bank USA, 316 F.R.D. 215 (N.D. Ill. Mar. 2, 2016), is particularly instructive. With over $2.49 billion in assets, the settlement was a mere $34 million with a potential win of $16 billion at $500 per member or $48.3 billion if tripled as knowing and willful. Compare these small approved settlements for giant companies with the Defendant here who employs between 700 and 1,000 employees at any given time.

As noted previously, defense counsel has shown the Master these audited financials and would provide them to the Court for in camera review, not to be recorded or reported or published. Two cases in the Eastern District of Pennsylvania also note the importance of the ability of a defendant to withstand a greater judgment. *See* In re Ravisent Techs., Inc. Sec. Litig., 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (noting "substantial risk" that defendants could not withstand greater judgment than proposed $9.7 million settlement); *see also* In re Corel Corp. Inc. Sec. Litig., 293 F. Supp. 2d 484, 489 (E.D. Pa. 2003) (proposed settlement of 47 million was fair, reasonable, and adequate where defendant had suffered "significantly declining revenues

and losses" and where defendant's financial condition was "dominant factor favoring settlement").

In sum, the Defendant has represented to me that, despite operating in the black in 2018, this turnaround from losses in the preceding years during which this settlement was negotiated does not mean that the company can withstand a greater loss in litigation or support a greater recovery in the settlement. Again, the sub-prime lender business is subject to the state of the economy and interest rates over which the company has no control. Of particular importance as well, is the timing of the settlement in view of the state of the law at that time. The specific devices to which the TCPA applied was uncertain at the time of the settlement and the negotiations were somewhat dependent on decisions that the parties were awaiting. Moreover, the prior decisions of this Court were also of importance in the negotiations. The timing of the settlement should therefore be taken into account. Furthermore, the settlement amount here was heavily negotiated over many months and the company has many defenses of which the Court has already been apprised in the various filings.[4] The amount here accounts for the risks for both sides as determined throughout the negotiations.

Of equal importance to the fairness and reasonableness of the settlement is the level of participation by class members. The participation rate is most determinative of individual recovery. Here, 67,255 claims were filed which is over 20 percent of the 327,924 class members. This 20 percent participation rate is a tribute to the clarity of the notice and the ease of filing. See Exhibit A attached hereto. Perhaps a less clear, hard to read notice with small print verbiage would have yielded fewer claims and thus greater per person individual recovery. The fact that more people who were allegedly harmed are receiving cash money and only four opted

---

[4] Not only is there an issue here as to class certification, but the device used here may not be an ATDS within the TCPA as that issue evolves. Finally, the issue of the constitutionality of mandatory damages remains

out and no one objected not only speaks to the clarity of the notice, but also to the robust efforts of the all counsel to seek a fair result in the settlement for those whom the TCPA was designed to protect.

Three approved TCPA settlements in this Circuit illustrate the importance of the participation rate. In Duchene v. Westlake Services LLC., No. 2:13-CV-01577-MRH, 2016 W.L. 6916734 (W.D. Pa. July 14, 2016), Judge Hornak approved a settlement of ten million dollars with approximately one million members and a participation rate of 13.5%. Of the one million members, 117,821 submitted claim forms producing an individual recovery of $49.78. If the claims participation rate here were the same as in Duchene, each claiming number would receive $60.

In Brown v. Rita's Water Ace Franchise Co. LLC., No. CV15-3509, 2107 W.L. 4102586 (E.D. Pa. Sept. 14, 2017), Judge Savage approved a $3 million dollar settlement for a class of 13,140 members of which 10,164 submitted claims. This participation rate of 7.3 percent yielded a significant recovery for each member where 9,684 members received $144 and 480 members received $1,584 depending on an award unit formula. If the participation rate here were 7.3 percent, each claimant would receive $110.96.

In Vasco v. Power Home Remodeling Grp. LLC., No. CV 15-4623, 2016 W L. 5930876 (E.D. Pa. Oct. 12, 2016), Judge Kearney approved a $5.2 million dollar settlement with 1.1 million class members. The claims rate there was 9 percent providing $26.63 of per person recovery. If the participation rate here were 9 percent, each claimant would receive $89.91. Accordingly the amount here of $35.30 is plainly related to and established by the participation rate, not the settlement amount. In evaluating fairness and reasonableness of the settlement here, comparison with these cases, especially those with significantly lower participation rates, places

this settlement within a reasonable recovery range. See also the cases listed in Exhibit B attached hereto.

While not determinative of the fairness or reasonableness of the settlement, nevertheless the fact that there were no objections to it provides some assurance that the settlement is fair and reasonable. The notice sent pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, was sent to the Attorneys General of the United States and the Attorneys General of all 50 states. While we cannot know the quality of the review by each, nevertheless, the failure of any to assert any comment or criticism supports approval of this settlement.

Finally, the issue of approval here is also impacted by the risks in this particular case for both parties. Some of the significant issues in the case were mentioned earlier in footnote four. At this juncture these issues are real and nothing is assured. Again, this uncertainty is particularly significant here, where the issue of the definition of ATDS within the TCPA jurisprudence is far from settled. *Compare* Wilson v. Quest Diagnostic, 2018 WL 6600096 (D.N.J. Dec. 17,2018 at 2-3 with Richardson v. Verde Energy USA, Inc., 354 F.Supp. 3rd 639,648 (E.D. Pa. 2018). Accordingly it seems prudent to assure recovery for the class rather than leave them to a very uncertain future.

For all of the foregoing reasons, I find that the settlement amount is fair and reasonable and meets the requirements of the Third Circuit case law.

Dated: 11/21/19

Jane Cutler Greenspan (Ret.)
Special Master

Case 2:17-cv-02069-MMB   Document 20-3   Filed 07/12/18   Page 52 of 84

EXHIBIT A

NOTICE FROM
UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(not a lawyer solicitation)

A Settlement Agreement has been reached in a class action lawsuit alleging that Flagship Credit Acceptance LLC ("Flagship") used automatic telephone dialing systems and/or prerecorded voices to call cellular phones in violation of the Telephone Consumer Protection Act. Flagship's records show that you may have received these calls and may be entitled to payment under the Settlement Agreement reached in the case.

A settlement fund of $4,000,000.00 has been established to pay valid claims, attorney's fees, costs, any incentive award to the Class Representative and settlement administration costs. You may be entitled to receive an equal share of the fund. The final cash payment for Class Members will depend on the total number of valid and timely claims filed by all Class Members. Your legal rights are affected whether you act or don't act so read this notice carefully.

This Postcard Notice contains limited information about the Settlement. For more information or to submit an online Claim Form, visit SETTLEMENTWEBSITE.com

TCPA SETTLEMENT
CLAIMS ADMINISTRATOR
[[[   ]]]

[CLAIM ID IN DIGITS]
[CLAIM ID IN BARCODE]

Postal Service: Please Do Not Mark or Cover Barcode

[FIRST1] [LAST1]
[BUSINESSNAME]
[ADDR1] [ADDR2]
[CITY] [ST] [ZIP]

PRESORTED
FIRST-CLASS
MAIL

U.S. POSTAGE
PAID

If you wish to participate in the settlement, please complete, sign, and return this Settlement Claim Form or submit an Online Claim Form.

VIVINTTCPA

You must complete and submit a Claim Form by _____. You may submit a Claim Form online at <u>SETTLEMENTWEBSITE.com</u> or by completing and submitting this Claim Form to receive your share. The final amount per class member will depend on the total number of valid claim forms received and how the Court distributes the Settlement Fund.

_____
Claim Number

_____
Cell Phone Number at which you received the call
(must complete if you do not have a Claim Number)

_____
Name

_____
Phone Number (optional)

_____
Address

_____
Email (optional)

_____
City, State  Zip

**Certification**

By signing and submitting this Claim Form, I certify and affirm that the information I am providing is true and correct to the best of my knowledge and belief, I am over the age of 18 and I wish to claim my share of the Settlement Fund.

Signature: _____

Date: _____

- *Grannan v. Alliant Law Grp., P.C.*, 2012 WL 216522, at *4, *7 (N.D. Cal., Jan. 24, 2012) ($300-325 to each class member who filed a claim, but only 1,986 out of 137,891 class members, or 1.44%, filed a claim);

- *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ($20.00 to $40.00 per class member with 3% claims rate);

- *Kolinek v. Walgreen Co*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (claimant recovery of $30 with participation rate of 2.5%);

- *Bayat v. Bank of the W.*, 2015 WL 1744342, at *5-6 (N.D. Cal., Apr. 15, 2015) ($151 for each class member who filed a claim, 1.9% of class filed a claim);

- *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1043–44 (S.D. Cal. 2015) ($13.75 per claimant with 7.7% claims rate);

- *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678, (D. Or. Jan. 5, 2016) (claimant recovery of $140.86 with participation rate of .08%);

- *Gehrich v. Chase Bank USA, N.A.*, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) (claimant recovery of $52.50 with participation rate of 1.08%);

- *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approving $45 per claimant with approximate 8% claims rate (188,000/2.3MM));

- *James v. JPMorgan Chase Bank, N.A*, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) (approving recovery of $50 per claimant at 5% claims rate) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action."); and

- *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (recovery of $33.20 with 20% claims rate "compares favorably with settlements in other TCPA class actions").

Exhibit B