# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Robert Ward,** *on his own behalf and on behalf of all others similarly situated*,<br>Plaintiff,<br>v.<br>**Flagship Credit Acceptance, LLC,**<br>Defendant | **CIVIL ACTION NO. 17-2069** |

**Baylson, J.**    **MEMORANDUM RE: MOTION TO STAY**    November 10, 2020

## I. Background

Plaintiff filed this putative class action in May 2017. (Compl. 1–10, ECF 1), alleging that Flagship violated the Telephone Consumer Protection Act ("TCPA") by illegally calling class members' cell phones with an automated telephone dialing system ("ATDS"). (Id. at 1). The Complaint includes two counts brought under the TCPA—one for negligent violations of the Act, and one for knowing and/or willful violations of the Act. (Id. at 7–9).

The TCPA only covers calls made with an ATDS. See 47 U.S.C. § 227(b)(1)(A); see also this Court's prior decision in Dominguez v. Yahoo, *infra.,* and Richardson v. Verde Energy USA, Inc., 354 F. Supp. 3d 639, 643 (E.D. Pa. 2018) (Beetlestone, J.). Thus, how Defendant's dialing system works, and a precise definition of an ATDS is relevant to this case. Due to a circuit split on the applicable definition,[1] the Supreme Court is set to hear oral argument on December 8, 2020, which may clarify the meaning of an ATDS in Facebook, Inc. v. Duguid.[2]

---

[1] See Duran v. La Boom Disco, Inc., 955 F.3d 279, 281 n.5 (2d Cir. 2020) (describing the split).
[2] 926 F.3d 1146 (9th Cir. 2019), cert. granted in part, 19-511, 2020 WL 3865252 (U.S. July 9, 2020).

1

## II. Parties' Arguments

Defendant Flagship argues that both of Plaintiff's counts are premised on the use of an Automated Telephone Dialing System ("ATDS"). (Def.'s Mot. to Stay 7, ECF 57-1). Current Third Circuit precedent holds that ATDSs do not include systems used by businesses to call their own customers; the statute only covers random or sequential number generators. See Dominguez v. Yahoo, Inc., 894 F.3d 116, 121 (3d Cir. 2018). Flagship contends its system does not randomly or sequentially generate phone numbers when it makes calls to consumers, and that it therefore does not use an ATDS as defined by the Third Circuit. (Def.'s Mot. to Stay 11).

Because the Supreme Court may resolve the circuit split on the definition of ATDSs, Defendant argues that the scope of the case will be very limited if the Court resolves the definition in line with current Third Circuit law and that the case should therefore be stayed. (Id. at 14–18). However, there is no assurance the Supreme Court will definitively solve this issue. A remand for more facts is one of many possibilities. Defendant contends that a stay will promote judicial economy by enabling more focused litigation on both legal issues and discovery matters; and that it will save Defendant money by waiting to see the nature and scope of pursuable claims. (Id. at 14–16). Defendant also argues that Plaintiff would not be prejudiced by a stay, because oral argument is scheduled for December 2020, no formal discovery has taken place, and no scheduling orders have been set. (Id. at 17–18).

Plaintiff opposes the stay. (See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Stay, ECF 59). His main argument is that no matter what definition of ATDS the Supreme Court adopts, the parties will still need to pursue discovery concerning how Defendant's system dialer placed calls to Plaintiff and members of the putative class. (Id. at 1–2). Plaintiff adds that there are also issues unrelated to the definition of ATDS, including class composition and size, a possible

consent defense, and damages. (Id. at 2). At bottom, Plaintiff argues, imposing a stay to wait for the outcome of Facebook would not simplify the litigation. (Id. at 3–4). Lastly, Plaintiff contends that Defendant has not shown any hardship or inequity to justify the stay, and that continuation of the case will not cause Defendant to suffer significant hardship or inequity. (Id. at 4–5, 6–8). To the contrary, Plaintiff's position is that a stay would prejudice himself and the class members by hindering their interest in just, speedy resolution of the lawsuit, and by making relevant evidence more difficult to obtain. (Id. at 5–6)

### III. Discussion

#### A. Legal Standard

Deciding a motion to stay is within the district court's discretion because "it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." Destination Maternity Corp. v. Target Corp., 12 F. Supp. 3d 762, 767 (E.D. Pa. 2014) (quoting Cost Bros., Inc. v. Travelers Indent. Co., 760 F.2d 58, 60 (3d Cir. 1985)) (Brody, J.). The court makes a multifactored inquiry in deciding whether to grant the motion. See id. ("[A] court may decide to grant a motion to stay in order to avoid inconsistent results, narrow the issues . . . or simply to avoid the needless waste of judicial resources.") (quoting Air Vent, Inc. v. Owens Corning Corp., No 10-1699, 2012 WL 1607145, *2 (W.D. Pa. May 8, 2012)). The court may also consider harm to the parties. See Prometheus Radio Project v. F.C.C., No. 03-3388, 2003 WL 22052896, *1 (3d Cir. Sept. 3, 2003).

#### B. Analysis

The Court partially agrees with Plaintiff's arguments. While litigants can hope the Supreme Court definitely defines an ATDS, and doing so may be important to the particulars of Plaintiff's claims, there is no assurance this will occur. Discovery shall proceed as to the

specifics of Defendant's calling systems, as very relevant to whether those systems may qualify as ATDSs. (See Pl.'s Opp'n at 1-2). Likewise, as Plaintiff notes, there are several issues relevant to the litigation that do not concern the definition of an ATDS, such as the viability of the consent defense. (Id.).

Furthermore, because the parties can productively proceed with some discovery on these limited issues, the Defendant will not suffer any undue hardship. The stay will be granted as to any discovery on class action issues. See Heinzl v. Cracker Barrel Old Country Store, Inc., No. 2:14-cv-1455, 2016 WL 5107173, *2 (W.D. Pa. June 8, 2016) ("In every case, a party may have to expend money on discovery that could later be deemed unnecessary if the case is reversed on appeal, but that fact does not transform such expenses into irreparable harm."). This Court acknowledges the Plaintiff's legitimate interest in proceeding with limited discovery relevant to Defendant's documents on the details of its system, and limited depositions on individuals with knowledge of Defendant's system. A decision from the Supreme Court would most likely arrive in late Spring; pausing the litigation completely until then would entail undue delay and may interfere with the reliability of evidence. See D'Omilia Plastic Surgery, PC v. Sweeton, No. 12-06415 (FLW), 2013 WL 6070037, *2 (D.N.J. Nov. 18, 2013) ("[A] delay may lead to the loss of evidence and frustrate a plaintiff's ability to put on an effective case.").

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Stay is **GRANTED** in part and **DENIED** in part. An appropriate Order follows.

O:\CIVIL 17\17-2069 Ward v Flagship Credit\17cv2069 Memorandum re Motion to Stay Discovery 11102020.docx